## 54649. BITUMINOUS CASUALTY CORPORATION v. MOWERY.

QUILLIAN, Presiding Judge.

Plaintiff Mowery brought an action against his employer's insurer, the Bituminous Casualty Corporation, for "no fault" benefits under the provisions of the Georgia Motor Vehicle Accident Reparations Act (Code Ann. Ch. 56-34B (Ga. L. 1974, p. 113 et seq., as amended)).

Mowery was a driver-salesman for the Dixie Bottle & Beverage Company. His duties required him to manually load his truck with 80-110 kegs of beer. Each keg of beer weighed approximately 180 pounds. He also had to unload the kegs and truck them to the purchaser's storage area and again stack them. He estimated that during a normal day he would lift approximately 40,000 pounds.

On September 22, 1975, while engaged in his employment, he was involved in a motor vehicle accident and was injured. As a result of those injuries he was treated at the Howell Industrial Clinic by Dr. Howell. After three visits to the clinic, Dr. Howell referred plaintiff to Dr. Moore for further treatment. Mowery testifies that his neck had gone stiff, a large knot had

developed on the back of his neck, and he had unbearable pain throughout his head, arms and legs. Mowery stated that while undergoing treatment, the pain kept getting worse, he developed numbness in his legs, and was not satisfied with the treatment he was receiving.

Dr. Moore submitted his medical report on the plaintiff to the defendant insurer on November 5, 1975. His report stated: "I think he has had an acute cervical strain which needs nothing other than conservative treatment with the *use of cervical halter traction,* heat and analgesics. . . I find nothing to suggest any significant nerve involvement. . . I think he should continue to use his traction and heat, and I have asked him to gradually increase his activities, and I plan to see him in two weeks time. . .I frankly see no reason why we should not expect him to return to whatever kind of work he was doing in the past." (Emphasis supplied.) After receiving this report on November 5, the insurer sent the last check for lost wages to the plaintiff on the following day. Plaintiff stated that he submitted a bill to the insurer for a "cervical traction unit" which had been recommended by the doctor and it was denied. Plaintiff testified that because "they wouldn't pay for the traction unit" he retained an attorney who notified the insurer he was representing the plaintiff. Plaintiff's attorney submitted bills to the insurer for medical expenses incurred by Mr. Mowery on November 10.

On November 14, an adjuster for defendant insurer notified plaintiff's attorney: "It has been brought to our attention that the workmen's compensation carrier . . . has in fact previously submitted payment for these accrued medical expenses. As you know there is nothing in the Georgia Vehicle Accident Reparations Act clearly stating what insurance carrier is primarily responsible for medical expenses accrued by injured claimants. Since Mr. Mowery's claim is being handled under workmen's compensation and since we are allowed to pay directly anyone rendering medical treatment, we feel no obligation to pay these expenses. We feel that the workmen's compensation carrier should be the primary source as always, if such coverage does apply to an injured party. We merely want to prevent an injured party from

profiting as a result of the vagueness of these new laws."

Mr. Mowery testified that because he was "hurting so bad" after he discontinued treatment from Dr. Moore, he consulted Dr. Wood, an orthopedic surgeon, for treatment of his condition. Dr. Wood stated that X-rays revealed "narrowing of the C6-7 intravertebral disc space, with both anterior and posterior hypertrophic spur formations." Dr. Wood entered Mr. Mowery into the hospital and performed an electromyogram and nerve conduction study. These tests were positive. A myelogram was performed on the defendant's spinal column which revealed "a narrowing of the dye fluid at the C6-7 level, a large posterior spur projecting back and appearing to compromise the roots and perhaps even the spinal cord at this level. The nerve roots at the C6-7 level were very pronounced, they were swollen, . . .and this was very obvious on the myelogram."

Dr. Grady, a neurosurgeon, assisted Dr. Wood in these tests and they operated on Mr. Mowery on July 27, 1976, performing an "anterior cervical spine fusion." Both doctors, the neurosurgeon and the orthopedic surgeon, were of the opinion that the accident of September 22, 1975 could have been the precipitating cause of the plaintiff's injury and at no time during the period following the accident until after the operation was the plaintiff able to perform the duties required of him in his occupation.

The accident occurred on September 22, 1975. The insurer took a written accident report from Mr. Mowery on September 24. Defendant forwarded a "no fault" claim form to plaintiff on October 2 and it was returned on October 9, authorizing a release of medical information to the insurer. Plaintiff received payment of lost wages for five weeks but no medical payments were ever made by the insurer. The defendant's assistant claims manager admitted that the medical claims were denied "because it had been paid." On December 18, 1975, the insurer received a report from Dr. Moore that concluded: "I think this man is troubled more with nervousness and apprehension than he is with any significant physical disorder. I think return to work is probably the best possible medical treatment he can have. I have discussed

this with Dr. Howell. He is going to check with Dr. Howell before returning to work." However, defendant had stopped payments to the plaintiff on November 6. On January 2, 1976, the insurer forwarded a copy of Dr. Moore's report to plaintiff's attorney with the statement that "Dr. Moore release Mr. Mowery to perform usual work duties as of 10-27-75. I cannot see that we owe further payment of weekly benefits or medical."

Plaintiff then saw Dr. Wood on January 28. His attorney filed this action on February 24, 1976. After receiving the transcribed deposition of Dr. Wood, the defendants tendered the total amount remaining due under the policy, which had a $5,000 limit. The jury returned a verdict for the plaintiff for $4,235 medical "charges as directed," $1,984 attorney fees, and $7,956 punitive damages. The court made the verdict of the jury the judgment of the court. Defendant appeals. *Held:*

1. Defendant contends that the trial court erred in overruling their objection to medical treatment received by the plaintiff "subsequent to filing of the complaint." We do not agree. Evidence which is relevant is admissible. Code § 38-201. It is relevant if it relates to the questions being tried by the jury, either directly or indirectly, tends to illustrate or explain the issue, or aids the jury in arriving at the truth. *Kalish v. King Cabinet Co.,* 140 Ga. App. 345, 346 (232 SE2d 86). Evidence of medical treatment for the injury resulting from the accident, which was the basis of this action, is relevant where it tends to show that plaintiff's claim for reparations was valid and his medical treatment necessary. Defendant's expert was of the opinion the plaintiff's claimed injury was "more. . .nervousness and apprehension than. . .any significant physical disorder." The same medical expert released the plaintiff to return to his duties, according to the defendant on "10-27-75." We find no legal reason to prohibit the testimony of a rebuttal witness who examined the plaintiff after an action was filed where his opinion is relevant to the cause of the injury, its effect, and even its medical resolution which occurred after the action was filed. It is clearly relevant to the controlling issue — the validity of plaintiff's claim for compensation. See *Graves v. Campbell,* 35 Ga. App. 418 (1) (133 SE 267).

We find no error as to the first two enumerations.

2.  In its third enumeration of error defendant claims it was error for the court to deny their "motion for directed verdict as to Count One." On the pages cited by defendant's brief, we found what was termed "a motion addressed to count 1." The basis of that motion was apparently whether or not the refusal of the defendant to pay the medical claims of the plaintiff was "reasonable." Counsel for defendant admits "the question of payment of medical expenses had become moot because it was agreed by the parties and the Court that the appellant owed the entire balance of 'no fault' benefits as weekly income benefits for the weeks the plaintiff was disabled. [Cits. omitted.] The Appellant's motion was therefore addressed to the issue of penalty, attorney's fees and punitive damages contained in Count One."

The Code provides: "(b) Benefits required to be paid without regard to fault shall be payable monthly as loss accrues. Such benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained. . .In the event the company fails to pay each benefit when due, the person entitled to such benefits may bring an action to recover them, and the company must show that its failure or refusal to pay was in good faith. . ." Code Ann. § 56-3406b (b) (Ga. L. 1974, pp. 113, 119; 1975, pp. 1202, 1208). Thus, the issue presented is whether the defendant's action in refusing to pay plaintiff's claim amounted to "good faith."

The argument articulated to the trial court was that this is a matter of first impression as to whether the "no fault" insurance carrier is required to pay the injured party medical benefits that have already been paid to the doctor by workmen's compensation. At the trial, defendant cited *Progressive Cas. Ins. Co. v. West,* 135 Ga. App. 1, 2 (217 SE2d 310), which held: "If there is any reasonable ground for contesting the claim there is no bad faith and it is error to award penalty and attorney's fees."

On appeal, defendant directs our attention to *State Farm Mut. Auto. Ins. Co. v. Bass,* 231 Ga. 269 (201 SE2d 444), wherein it was stated: "We consider the issue raised in this case to be one of first impression. Since the Court of Appeals divided 6-3 on the issue, and since this Court

granted an application for a writ of certiorari ,to resolve the issue, we hold that the insurer was legally justified in litigating the issue and cannot, as a matter of law, be liable for the statutory penalty for bad faith under Code Ann. § 56-1206." This is a difficult test to apply inasmuch as we cannot predetermine how many members of this court, if any, would dissent from our holding on the present issue, or whether the Supreme Court would or would not grant certiorari to resolve the question. Using the remaining criterion, we find this is a case of first impression. But, does this criterion alone — "as a matter of law," forbid the imposition of sanctions authorized by Code Ch. 56-34B? We find that it does not.

Our Supreme Court held in *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 765 (12 SE 18), that "[t]he faith of the company should not be judged by the preliminary proofs or other ex parte affidavits, but by the case made at the trial. The preliminary proofs go to the liability, not to the faith of the company. Its duty to pay, without delay or resistance, would arise out of the fact of [the basis of the claim] and the reception of sufficient preliminary proofs, and that duty could not be made more obligatory by any additional information volunteered by the plaintiff before or after suit. In refusing payment after due demand according to the statute, the company would act at its peril, a peril neither increased nor diminished by the amount of information it might have or obtain, but only by the weakness or strength of its defence as manifested at the trial. . .A defence going far enough to show reasonable and probable cause for making it, should vindicate the good faith of the company. . . On the other hand, any defense not manifesting such reasonable and probable cause, would expose the company to the imputation of bad faith and to the assessment of damages therefor under. . . the code." This rule has been followed by both appellate courts for the past 87 years. See *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 213 (121 SE2d 649); *Interstate Life &c. Ins. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668); *New York Life Ins. Co. v. Ittner,* 59 Ga. App. 89, 103 (200 SE 522); *Reserve Life Ins. Co. v. Peavy,* 98 Ga. App. 268, 270 (105 SE2d 465).

"Bad faith within the meaning of the statute is any

frivolous or unfounded refusal in law or in fact to pay a loss according to the insurance contract after legal demand." *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 212, supra. "Should the insurance company show a reasonable and probable cause for refusing to pay, the company's good faith would be a complete defense to the action." *Independent Life &c. Ins. Co. v. Thornton,* 102 Ga. App. 285, 292 (115 SE2d 835). "Probable cause for refusing payment will negative the imputation of bad faith, and *without such probable cause refusal will be at the company's peril."* *Interstate Life &c. Ins. Co. v. Hopgood,* 133 Ga. App. 6, 9 (209 SE2d 703).

Accordingly, there are a number of issues to be decided before arriving at a solution. First, although *Bass,* supra, related to a showing of *"bad faith"* of an insurer under Code Ann. § 56-1206, where the burden of proof is on the insured (*Ga. Farm Bureau Mut. Ins. Co. v. Calhoun,* 127 Ga. App. 213 (2) (193 SE2d 35)), the test under Code Ann. § 56-1406b which is applicable here, is one of *"good faith"* of the insurer, and the burden of proof is on the insurer. Secondly, defendant contends that he has carried his burden of showing "good faith" by showing the absence of "bad faith" because he is litigating a "first impression" issue. Although this is persuasive argument, we are not convinced the solution is found in defendant's syllogism; i.e.: This is a "first impression" issue. Litigating a "first impression" issue is not, as a matter of law, "bad faith" (*Bass,* supra). Ergo, if it is not "bad faith," it must be "good faith."

In the instant case, Code Ann. § 56-3409b (a) (Ga. L. 1974, pp. 113, 120) specifically advises insurers that "[t]he benefits payable under this Chapter shall not be reduced or eliminated by any workmen's compensation benefits. . .that the injured person is entitled to receive." The record is just as explicit that defendant's stated reason for denying the claim was: "Since Mr. Mowery's claim is being handled under workmen's compensation and since we are allowed to pay directly anyone rendering medical treatment, we feel no obligation to pay these expenses." The other reason given by the defendant was that they wanted "to prevent an injured party from profiting as a result of the vagueness of these new laws."

We have not found the statutes referred to by the defendant to be vague or conflicting. They clearly authorize the claim denied by the defendant. With reference to the desire of the insurer to prevent the injured party from "profiting," we refer them to the "Collateral Source" rule recognized in the law of damages. See 25 CJS 1011, Damages, § 99 (1); and 7 ALR3d 516. We find no illegality in a claim authorized by a statute which permits an injured party to receive compensation for injuries from more than one source. The intent of the legislature in this instance is clear that they intended the injured party to receive compensation from any of the listed sources, and such collateral compensation would neither "reduce or eliminate" the "no-fault" benefits payable under Ch. 56-34B.

Defendant argues that the statute gave the insurer the option to pay a "no-fault payment . . . directly to persons and firms" supplying medical care. Therefore, they contend that "the injured person is not necessarily 'entitled to receive' medical expenses," as permitted by the statute. If this reasoning is accurate, where a doctor requires a patient to pay at the time of receipt of medical care, an insured would not be entitled to reimbursement from an insurer. We can not approve such an illogical result. The statute is clear and unequivocal. The "no-fault" benefits "shall not be reduced or eliminated by any workmen's compensation benefits. . .the injured person is entitled to receive." In the instant case, the option of the insurer to pay the doctor had been negated by prior payment of workmen's compensation and the only remaining claimant was the insured. His entitlement was statutorily authorized and protected.

The action of the insurer was in direct violation of the statute. *Sheppard,* supra, also holds that "[i]n refusing payment after due demand. . .the company would act at its peril. . . [But]. . . [a] defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company. . ." 85 Ga. p. 765. Does the defense presented by the insurer, although it litigates an issue of first impression, vindicate the good faith of the company? We find that it does not. An example will suffice. If a statute, without qualification, requires an

insurer to respond to a claimant's proof of loss within 30 days, and the insurer intentionally refused to respond for 120 days, without cause or justification, can the insurer avoid the penalty provisions of the statute by concluding it is cheaper to litigate a "first impression" issue than pay the penalty for deliberately flouting the statutory requirement? We say no. We do not question the holding of *Bass,* supra, but interpret its holding citing the 6-3 division of this court on the issue presented, and the Supreme Court's grant of certiorari, as holding — in effect, that it is not a showing of "good faith" per se for an insurer just to show the issue is one of "first impression." But, there must be "reasonable and probable cause" for the insurer litigating the "first impression" issue. They found reasonable and probable cause to litigate the first impression issue because this court divided 6 to 3 on it, and their court also wanted to determine the issue.

*Sheppard,* supra, provides the proper guidelines. Was there "reasonable and probable cause" for the insurer taking the action he took? If so, whether the defense was one of "first impression" or a defense asserted many times before, the defendant's good faith in litigating the question would be a bar to imposition of the statutory penalty.

Because the reason stated by the defendant insurer was in direct contravention of a clearly stated provision of a statute, we find reasonable and probable cause lacking. Thus, "the refusal for this reason was not in law adequate, and therefore constituted the refusal and 'unconditional' refusal to pay," invoking the penalty provisions of the statute. *Union Central Life Ins. Co. v. Trundle,* 65 Ga. App. 553, 558 (15 SE2d 909); cf. *Great Am. Ins. Co. v. Exum,* 123 Ga. App. 515, 518 (181 SE2d 704); *Nationwide Mut. Ins. Co. v. Ware,* 140 Ga. App. 660, 663 (231 SE2d 556).

A second reason exists for our holding. The question of good or bad faith of the insurer is for the jury. *Government Employees Ins. Co. v. Hardin,* 108 Ga. App. 230, 235 (132 SE2d 513). Accord, *Pearl Assur. Co. v. Nichols,* 73 Ga. App. 452, 455 (37 SE2d 227); *Key Life Ins. Co. v. Mitchell,* 129 Ga. App. 192, 195 (198 SE2d 919). The

court charged the jury that if they found "the defendant insurance company had any reasonable ground for contesting the claim of [the plaintiff], then there was no absence of good faith on the part of the insurance company and [the jury] would not be authorized to award penalty and attorney fees." This charge was expressly agreed to by counsel for the defendant. The jury found for the plaintiff and awarded attorney fees and punitive damages. After verdict is rendered and it has the approval of the trial judge, the evidence in support thereof must be construed most strongly in favor of supporting the verdict — absent error of law. *Cotton v. John W. Eshelman & Sons,* 137 Ga. App. 360, 365 (223 SE2d 757). We find no basis in law for reversing the judgment of the court.

3. For the reasons stated above, the trial court did not err in denying defendant's motion for a directed verdict as to Count 2 of the complaint. *Peachstone Development Ltd. v. Austin,* 133 Ga. App. 684 (212 SE2d 18).

4. Defendant's last enumeration of error alleges that the trial court erred in denying his motion for new trial. We have answered the enumerations as to the admissibility of evidence of medical treatment of the plaintiff after this action was filed in Division 1 above. We upheld the jury's finding that the defendant failed to show good faith in denying the plaintiff's claims in Division 2. We now turn to the issue of the lack of proof of all of plaintiff's medical claims.

Plaintiff, through his lawyer, requested payment of part of his medical claims. Mr. Jennings, Assistant Claims Manager for defendant, testified that he had received plaintiff's application for benefits, and the bill submitted through the attorney. He "supervised the claim" and admitted that he received the "further claim for medical expenses" which they denied.

As stated earlier, the insurer acted at his peril in giving the insured an unconditional refusal to pay, and "[s]uch refusal amounted to a waiver of the requirement of furnishing due proofs of disability as required by the policy." *Union Central Life Ins. Co. v. Trundle,* 65 Ga. App. 553, 558, supra; *Gilley v. Glens Falls Ins. Co.,* 81 Ga. App. 71, 79 (58 SE2d 218); *Government Employees Ins. Co.*

*v. Hardin,* 108 Ga. App. 230, 234, supra; *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14 (1) (198 SE2d 381). The refusal to pay the valid claim here waived proof required by the policy. Thus, the court did not err in denying defendant's motion for new trial.

5. The general grounds are without merit.

*Judgment affirmed. Shulman and Banke, JJ., concur.*

SUBMITTED OCTOBER 11, 1977 — DECIDED JANUARY 30, 1978 — REHEARING DENIED FEBRUARY 28, 1978 — CERT. APPLIED FOR.

*Hutcheson & Hull, Ward D. Hull,* for appellant.
*Henning, Chambers & Mabry, Lawrence J. Hogan, Jones, Wilson & Tomlinson, John J. Jones,* for appellee.

