DECIDED APRIL 27, 1988 —
REHEARING DENIED MAY 12, 1988.

*Mark J. Goodman*, for appellants.
*Murl E. Geary, Elton L. Wall*, for appellee.

76263. GEORGIA AMERICAN INSURANCE COMPANY v.
MILLS.
76326. SOUTHEASTERN FIDELITY INSURANCE COMPANY v.
MILLS.
(369 SE2d 768)

BANKE, Presiding Judge.

The appellee, Frankie Mills, filed suit against the appellants, Georgia American Insurance Company and Southeastern Fidelity Insurance Company, to recover personal injury protection, or "no-fault," benefits allegedly due her under a policy of motor vehicle accident insurance issued to Glynn Herrin. She also sought to recover a statutory bad-faith penalty, attorney fees, and punitive damages based on the appellants' failure to pay the claim in a timely manner.

After the appellants had filed their separate answers, the appellee filed an amendment to her complaint in which she designated Georgia American as the sole defendant. Thereafter, Southeastern Fidelity was not listed as a defendant in any of the pre-trial pleadings or orders filed in the case. Likewise, during the trial of the case no evidence was introduced tending to establish that Southeastern Fidelity was a party to the policy sued upon.

The jury returned a verdict in favor of the appellee and against Georgia American. After moving unsuccessfully for judgment notwithstanding the verdict or, in the alternative, for a new trial, Georgia American filed a direct appeal to this court. However, that appeal was dismissed on the ground that the case was technically still pending in the trial court, in that no written order had ever been entered dismissing the claim against Southeastern Fidelity. See *Georgia American Ins. Co. v. Mills*, 183 Ga. App. 707 (359 SE2d 697) (1987). Upon the return of the case to the trial court, the judge denied a motion for summary judgment filed by Southeastern Fidelity, while directing the entry of a final, appealable judgment against Georgia American pursuant to OCGA § 9-11-54 (b). The present appeals are taken from the latter order.

The appellee sustained the injuries upon which her claim was based while riding as a passenger in a truck being driven by the named insured's wife, Elizabeth Herrin. Although Mrs. Herrin was

listed on the declarations page of the policy as an "operator" of the vehicle, the word "excluded" was typed in close proximity to her name; and it was shown that upon applying for the policy Mr. Herrin had executed a "Named Driver Exclusion Endorsement" specifying that coverage would not be afforded "while any vehicle is being used, driven, operated by, or under the care, custody and control of Elizabeth Herrin." Virtually all of the enumerations of error in this appeal concern the enforceability of this exclusion. *Held*:

1. The insurer was required by the Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq., to "pay basic no-fault benefits without regard to fault for economic loss resulting from: . . . (2) Accidental bodily injury *sustained by any . . . person while occupying the owner's motor vehicle. . . .*" OCGA § 33-34-7 (a) (2). (Emphasis supplied.) See also OCGA § 33-34-3 (a) (1). "Thus, the policy exclusion in this case . . . is unenforceable because, if allowed to be effective, it would reduce the coverage below the minimum required by the no-fault statute." *Smith v. Southeastern Fidelity Ins. Co.*, 258 Ga. 15 (365 SE2d 105) (1988). Accord *Southeastern Fidelity Ins. Co. v. Johnson*, 256 Ga. 713 (352 SE2d 760) (1987). It follows that the trial court did not err in denying Georgia American's motions for directed verdict or for judgment notwithstanding the verdict on the coverage issue.

2. Nor did the trial court err in denying Georgia American's motions for directed verdict or for judgment notwithstanding the verdict on the issue of its liability for a bad-faith penalty, attorney fees, and punitive damages. We reject Georgia American's contention that its good faith in defending the claim was established as a matter of law by evidence showing that the appellee had "voluntarily acquiesced to ride in a vehicle driven by a driver known to have been convicted of DUI, to have had a couple of prior accidents, and to have been involved in drinking on the night of the incident." To allow an insurer to defend an injured passenger's claim for no-fault benefits on the basis of such evidence would defeat the purpose of the statute, which is to ensure that certain minimal compensation is made available to persons injured in automobile accidents "without regard to fault." OCGA § 33-34-7. See generally *Cannon v. Ga. Farm &c. Ins. Co.*, 240 Ga. 479, 482 (241 SE2d 238) (1978).

While certain specified exceptions to the insurer's obligation to pay mandatory no-fault benefits are set forth at OCGA § 33-34-7 (b), knowledge on the part of a passenger that the driver of the vehicle had a poor driving record or was not in a condition to drive safely is not among them. Nor would such knowledge on the part of the passenger prevent his or her injuries from being considered "accidental" within the contemplation of the statute. Pursuant to OCGA § 33-34-2 (1), "[b]odily injury is accidental as to the claimant unless sustained

intentionally by the person injured or caused intentionally by the claimant." None of the evidence in this case suggests that the appellee's injuries were self-inflicted or that she intentionally caused the accident. For these reasons, we hold that the jury was authorized to award her a bad-faith penalty, attorney fees, and punitive damages pursuant to OCGA § 33-34-6. See generally *Binns v. MARTA*, 250 Ga. 847 (301 SE2d 877) (1983); *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 53-54 (244 SE2d 573) (1978).

Georgia American's reliance on *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (329 SE2d 136) (1985), is misplaced. In that case, which involved liability insurance coverage rather than no-fault coverage, the Supreme Court held that a policy exclusion pertaining to injuries inflicted while a driver was "attempting to avoid apprehension or arrest" was unenforceable against an innocent victim with whom a driver of the insured vehicle had collided while attempting to elude a state patrolman. With respect to the passengers who had been riding in the insured vehicle at the time of the collision, the Court held that the exclusion might or might not be enforceable, depending on whether they were "willing participants in the attempt to elude the pursuing patrolman." Id. at 342 (3). This holding in no way purports to modify the definition of "accidental bodily injury" set forth in the Motor Vehicle Accident Reparations Act at OCGA § 33-34-2 (1), nor does it purport to modify the statutorily mandated coverage requirements set forth in the Act at OCGA §§ 33-34-3 (a) (1) and 33-34-7, supra. Moreover, there was no evidence to suggest that the appellee in this case was engaged in a criminal enterprise at the time of the accident, nor, in any event, did the exclusion in question purport to be limited in its application to situations involving criminal misconduct.

3. The trial court did not err in excluding evidence of a prior felony conviction which had been entered against Mrs. Herrin. This evidence was offered by Georgia American in an attempt to impeach Mrs. Herrin's credibility, particularly with reference to her testimony that she believed her husband had given her permission to drive the truck. For the reasons previously stated, Mrs. Herrin's permission, or lack of it, to drive the truck was not relevant under the circumstances of this case to the issue of Georgia American's obligation to pay no-fault benefits to the appellee for the injuries which she had sustained while occupying the vehicle as a passenger.

4. Any error in the trial court's instructions to the jury on the legal principles governing the construction of insurance contracts and the circumstances under which an insurer may be deemed to have waived the defense of non-coverage is rendered moot by our holding that the policy exclusion relied upon by the insurer was unenforceable against the appellee in this case as a matter of law.

5. The verdict form contained certain blanks to be completed in the event the jury chose to award a bad faith penalty, attorney fees, or punitive damages. The jury initially filled in these blanks as follows: "We further find that the plaintiff is entitled to: "(1) $ 0 as penalty; (2) $ All applicable fees for this suit, at $80.00 as Attorney's fees; and (3) $ Balance of medical bills caused by this accident to be paid to provider as punitive damages." The trial court determined that the form of this verdict was improper and consequently sent the jury back to draw up another one. The jury thereupon returned the verdict on which the judgment was based, filling in the blanks as follows: "(1) $ 625.00 as penalty; (2) $ 6,000 as attorney's fees; and (3) $ 28,262.00 as punitive damages."

On appeal, Georgia American contends that the proper procedure would have been to accept the original verdict while writing off the improper portion thereof (i.e., the portion attempting to award the appellee the unspecified balance of her medical expenses as punitive damages), thereby leaving a total award of $80. However, such an award clearly would not have reflected the jury's intentions. Moreover, Georgia American conceded at trial that the form of the original verdict was improper. " '(I)t is not error for a trial judge not to receive an improper or imperfect verdict, and to cause the jury to retire and put their verdict in proper form.' " *Colley v. Dillon*, 158 Ga. App. 416, 417 (3) (280 SE2d 425) (1981), citing *Lowery v. Morton*, 200 Ga. 227, 229 (36 SE2d 661) (1946).

6. Georgia American further contends that, upon recharging the jury prior to sending them back to the jury room, the court in effect directed a verdict in favor of the appellee on her claim for punitive damages by instructing them as follows: "Now, on the punitive damages part, the amount being asked by the plaintiff is an amount up to $250,000. Now, that doesn't mean you have to award the $250,000 but you will have to put in a figure there somewhere in between 0 and $250,000."

No such objection was raised at trial, with the result that this enumeration of error presents nothing for review on appeal. See generally OCGA § 5-5-24 (a); *Henderson v. Glen Oak, Inc.*, 179 Ga. App. 380 (4) (346 SE2d 842) (1986), aff'd 256 Ga. 619 (351 SE2d 640) (1987). The alleged error cannot be considered "harmful as a matter of law" within the contemplation of OCGA § 5-5-24 (c), so as to obviate the need for an objection, both because the trial court made it clear elsewhere in the recharge that the blanks in the verdict form were to be filled in only if the jury believed the appellee was "entitled to any of these damages," and because the jury had, in any event, already made clear in its original verdict its intention to award punitive damages.

7. Turning to Southeastern Fidelity's appeal, we conclude that

its motion for summary judgment was improperly denied. Only one policy was sued upon, and the evidence of record establishes without dispute that it was issued by Georgia American. Although it is apparent from the record that the two insurance companies are subsidiaries of the same parent corporation, it obviously does not follow that they are liable on each other's policies. Nor does the fact that a claims examiner for Southeastern Fidelity may have undertaken an investigation of the appellee's claim establish any basis for holding that company liable. On the basis of the record before us, Southeastern Fidelity was entitled to judgment as a matter of law.

*Judgment affirmed in Case No. 76263; judgment reversed in Case No. 76326. Birdsong, C. J., and Beasley, J., concur.*

DECIDED APRIL 25, 1988 —
REHEARING DENIED MAY 12, 1988 — ▮▮▮▮▮▮▮▮▮

*Terry A. Dillard, Bryant H. Bower, Jr., Joseph E. East,* for appellants.
*Berrien L. Sutton,* for appellee.