**Albert JONES, Plaintiff,**

v.

**The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.**

**No. 1:88–CV–03–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

May 30, 1989.

David E. Tuszynski, Nickerson & Tuszynski, Atlanta, Ga., for plaintiff.

William Lewis Spearman, Webb Carlock Copeland Semler & Stair, Atlanta, Ga., for defendant.

---

## ORDER

ROBERT H. HALL, District Judge.

This action is currently before the court on defendant's Motion to Deposit Money With Court, To Dismiss Complaint and For Other Relief. For the reasons stated below, the court GRANTS defendant's motion.

## FACTS

On April 24, 1986, plaintiff Albert Jones, while stopped in his pick-up truck at a red light, was struck from behind by another vehicle. As a result of this collision, Mr. Jones suffered injuries to his head, neck and back.

At the time of the accident, Mr. Jones had basic No–Fault/Personal Injury Protection ("PIP") insurance supplied by defendant (hereinafter "Aetna").

Mr. Jones received treatment for his injuries from Dr. Roger Curry, a chiropractor. Mr. Jones filed a claim for No–Fault/PIP benefits with Aetna. Aetna reimbursed plaintiff for $1,704.00 in medical expenses. Aetna also paid Mr. Jones No–Fault loss of income benefits for the period of disability as established by Dr. Curry [1] from April 24, 1986 through July 29, 1986 as follows:

| | |
|---|---|
| WEEK 1 (Partial week—4/24/86 only) | $ 58.41 |
| WEEK 2 (4/28–5/2/86) | $200.00 |
| WEEK 3 (5/5–5/9/86) | $200.00 |
| WEEK 4 (5/12–5/16/86) | $200.00 |
| WEEK 5 (5/19–5/23/86) | $200.00 |
| WEEK 6 & 7 (5/26–6/6/86) | $400.00 |
| WEEK 8 (6/9–6/13/86) | $200.00 |
| WEEK 9 (6/16–6/20/86) | $200.00 |
| WEEK 10 & 11 (6/23–7/4/86) | $400.00 |
| WEEK 12 (7/7–7/11/86) | $-0- |
| WEEK 13 (7/14–7/18/86) | $-0- |
| WEEK 14 (7/21–7/25/86) | $-0- |
| WEEK 15 (partial week—7/28–7/29/86 only) | $-0- |

By order dated November 2, 1988, 698 F.Supp. 226, this court held that O.C.G.A. § 33–34–4 merely requires the insurer to pay $200.00 per week to injured insureds throughout the period in which they are disabled, or until the $5,000.00 limitation on aggregate benefits is met. Thus, as reflected above, defendant paid plaintiff $200.00 per week for loss of income benefits from April 24 through July 4, 1986.

Defendant claims, however, that plaintiff was not disabled after July 4, 1986 and therefore was not entitled to loss of income benefits for the period from July 4–July 29, 1988. Plaintiff claims, in rebuttal, that he was unable to work until July 30, 1986. Plaintiff therefore seeks to recover loss of income benefits for the period from July 4–July 29, 1986, in addition to the period from April 24–July 4, 1986. Plaintiff also seeks statutory penalties and punitive damages from defendant for defendant's alleged bad faith failure to pay the claim for loss of wages within the period required under O.C.G.A. § 33–34–6(b) (25% penalty) and § 33–34–6(c) (punitive damages).

## DISCUSSION

Defendant has now offered to pay plaintiff $700.00 for loss of wages from the period of July 4–July 29, 1986. Defendant states that, although it believes it had a good faith reason for failing to pay plaintiff on demand for this period, defendant will now tender the disputed amount. Defendant has therefore filed its Motion to Dismiss this action as moot since defendant is offering to pay the outstanding loss of wages claim.

Plaintiff maintains that this action is not moot, because a jury should determine whether defendant's failure to pay plaintiff's loss of wage claim was in bad faith, thereby entitling plaintiff to statutory penalties and punitive damages.

O.C.G.A. §§ 33–34–6(b) and (c) provide for the imposition of penalties should an insurer fail to prove that it acted in good faith in failing or refusing to pay benefits sought.[2] The burden of proving good faith

---

1. While plaintiff contends he was unable to work from April 24 through July 29, 1986, defendant contends plaintiff was able to work after July 4, 1986.

2. O.C.G.A. § 33–34–6(b) provides, in pertinent part:

In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceed-

is placed on the insurer. *Atlanta Casualty Co. v. Jones,* 247 Ga. 238, 241, 275 S.E.2d 328 (1981), *Bituminous Casualty Corp. v. Mowery,* 145 Ga.App. 45, 54, 244 S.E.2d 573 (1978). In this context, good faith requires a showing of reasonable or probable cause for not paying the claim on time. *Id.* Generally, the question of the insurer's good faith is one of fact for the jury. *Binns v. MARTA,* 250 Ga. 847, 848, 301 S.E.2d 877 (1983). However, where there is no evidence of a frivolous or unfounded refusal to pay, the court should not allow the imposition of bad faith penalties. *Government Employees Insurance Co. v. Presley,* 174 Ga.App. 562, 566, 330 S.E.2d 779 (1985).

Defendant contends that, as a matter of law, its refusal to plaintiff's loss of income claim for the period from July 4 through July 29, 1986 was not in bad faith. Defendant asserts that it made a good faith objection to plaintiff's construction of O.C. G.A. § 33–34–4.[3] "(T)he court's determination that defendant's contentions in regard to such construction are correct establishes, as a matter of law, that defendant's contentions were not in bad faith." Motion to Dismiss, p. 4.

While this court has determined that defendant's construction of the statute to limit plaintiff's loss wage benefits to $200.00 per week was correct, the court finds that the reason for defendant's delay in paying benefits was not the dispute regarding the construction of O.C.G.A. § 33–34–4. Rather, it appears from the deposition testimony of Ms. Elizabeth Griswold, a claims adjuster for Aetna, that defendant's failure to pay the loss of income claim was due entirely to the report of Independent Medical Examiner Dr. Belcher.

Upon the request of Aetna, Dr. Belcher conducted an independent medical exam ("IME") of plaintiff in early June, 1986. In his report dated June 13, 1986, Dr. Belcher remarks:

> The lumbar strain is healing in a timely manner. The cervical spine has evidence of residuals which will probably require treatment for another four to six weeks. The visual symptoms are not responsive to my discipline. In my opinion, the neck/back symptoms will heal without residual impairment. *I see no medical reason that would prohibit the claimant from working at this time.* (emphasis added).

Deposition of Ms. Griswold, Plaintiff's Exhibit 1, p. 65.

When questioned as to why AETNA conducted an IME, Ms. Griswold, the Aetna adjuster with primary responsibility for processing Mr. Jones' claim stated on behalf of Aetna:

Q. And what else did you note in the running notes?

A. We needed a second opinion.

Q. What did you mean by needs a second opinion?

A. We need him evaluated for a second opinion on his condition.

Q. And what was it that—why is it that Aetna felt that you were—you or Aetna felt a need for a second opinion at this junction?

A. Because Dr. Curry did not give us any idea of how long he would be under treatment or how long he would be disabled.

Griswold Deposition, p. 49.

After obtaining Dr. Belcher's report, Aetna evidently felt that payment of plaintiff's loss of income claim was no longer justified:

Q. Why were no benefits paid to Mr. Jones, lost wage benefits paid to Mr. Jones after July 4, 1986?

---

ing 25 percent of the amount due and reasonable attorney's fees.

O.C.G.A. § 33–34–6(c) provides:

In addition to all other penalties provided for in this Code section, in the event that an insurer fails or refuses to pay a person the benefits which the person is entitled to under this chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover the benefits; and, if the insurer fails to prove that its failure or refusal to pay the benefits was in good faith, the insurer shall be subject to punitive damages.

**3.** See this court's order of November 2, 1988.

A. Because we had a report from Dr. Belcher that said that Mr. Jones could return to his work.

Q. Is that the only reason? I want to make sure there are no other reasons that aren't somehow reflected in what we've been talking about.

A. That's the only reason.

Deposition of Elizabeth Griswold, p. 78.

The court finds that the reason Aetna did not pay plaintiff's claims for lost wages between July 4 and July 29, 1986 was that Dr. Belcher's report indicated that plaintiff could return to work. The issue remains, however, whether Aetna's decision not to pay loss of income claims could be considered to have been made in bad faith such that plaintiff is entitled to an award of punitive damages and a statutory penalty. If Aetna acted in good faith in denying plaintiff's claim for the period of July 4 through July 29, 1986, then this action is moot, for Aetna has now tendered $700.00 for three and one half weeks of plaintiff's income and plaintiff would not be entitled to any additional bad faith penalties.

After reviewing all the documents submitted in this action, the court finds no indication that Aetna acted in bad faith in denying plaintiff's claim for loss of income benefits from July 4 through July 29, 1986. After Dr. Roger Curry indicated that plaintiff would be unable to return to work for an indefinite period of time, Ms. Griswold arranged for plaintiff to be examined by an independent medical examiner for a second opinion. This court holds that Aetna's decision to schedule an IME was reasonable as a matter of law. *See e.g., Jowers v. Nationwide Insurance Company*, 832 F.2d 1246 (11th Cir.1987) (Insurer did not act in bad faith in scheduling an IME prior to paying benefits when insurer received billings for large amount in a short period of time and the insured's chiropractor indicated no change in insured's condition prior to billings). Aetna could reasonably request a second opinion when an insured's doctor failed to approximate the appropriate length of treatment for the insured.

Dr. Belcher's IME, as noted above, indicated that there was no apparent reason why plaintiff could not return to work after July 4, 1986, although some follow-up treatment was required. Aetna's decision not to pay plaintiff's loss of income claim for the period between July 4 and July 29, 1986 was, therefore, based on the sound opinion of an independent medical examiner. The court finds that Aetna's failure to pay the entire loss of income claim submitted by plaintiff was not frivolous or unfounded. Accordingly, the court holds, as a matter of law, that Aetna did not act in bad faith such that plaintiff might be entitled to punitive damages or additional statutory penalties under O.C.G.A. §§ 33–34–6(b) and 33–34–6(c).

Defendant has filed a Motion to Deposit $700.00 with the court to compensate plaintiff for loss of income from July 4 through July 29, 1986. The court GRANTS defendant leave to deposit $700.00 with the court. This sum shall compensate plaintiff for his entire loss of wage claim against defendant. Since plaintiff is not entitled as a matter of law to any statutory increase or punitive damages, the current action is rendered moot by defendant's deposit of $700.00 with the court. Accordingly, the court GRANTS defendant's Motion to Dismiss this action, upon the condition that defendant tender the $700.00 which will be awarded as judgment to the plaintiff.

CONCLUSION

The court GRANTS defendant's Motion to Deposit Money With Court. Defendant is ordered to deposit $700.00 with the court pursuant to Fed.R.Civ.P. 67.

The court GRANTS defendant's Motion to Dismiss the Complaint because, as a matter of law, plaintiff is not entitled to any compensation or award in addition to the $700.00 to be deposited with the court. The clerk is DIRECTED to enter judgment in this action for plaintiff in the amount of $700.00. Plaintiff and defendant shall pay their own costs.

So ORDERED.