S93G0081. AMALGAMATED TRANSIT UNION LOCAL 1324 v. ROBERTS et al.
S93G0132. CHATHAM AREA TRANSIT AUTHORITY v. ROBERTS et al.

(434 SE2d 450)

CARLEY, Justice.

While an employee of appellant-defendant Chatham Area Transit Authority (Authority), appellee-plaintiff was injured when the bus that he was operating was struck by an automobile. As the result of his injury, he was unable to work. Thereafter, he was discharged from his employment with the Authority. Appellee requested that appellant-defendant Amalgamated Transit Union Local 1324 (Union) pursue a grievance for his reinstatement with the Authority, but the Union refused to do so. Appellee then brought the instant action, alleging that his contract of employment had been breached and seeking to recover the wages that he would have earned had his employment not been terminated. The case was tried before a jury. A verdict finding against appellee and in favor of both the Authority and the Union was returned.

Appellee appealed and the Court of Appeals reversed, holding as follows:

In *Denton v. Con-Way Southern Express, [Inc.]*, 261 Ga. 41 (402 SE2d 269) (1991), the Georgia Supreme Court held that OCGA § 51-12-1 (b) authorizing the admission in evidence of collateral source payments is unconstitutional. [Appellee] contends, for the first time on appeal, that the trial court erred in charging the jury that [it] could consider collateral source payments in mitigation of his injuries. This Court recently held in *Anepohl v. Ferber*, 202 Ga. App. 552 (415 SE2d 9) [(1992)], that the holding in *Denton* must be applied retroactively to those cases still pending at the time *Denton* was decided. [Cit.] "Pursuant to our ruling in *Anepohl*, [appellee] did not waive [his] objection to the trial court's charge on collateral source payments by failing to raise an objection at trial since, pursuant to OCGA § 5-5-24 (c), the charge was error as a matter of law." [Cit.] Furthermore, we reject [the Authority's and the Union's] argument that the collateral source rule is applicable only to tort cases and has no applicability to contract cases. While issues concerning application of the collateral source rule to contract cases arise less frequently, this Court has repeatedly applied this principle in breach of contract actions. See *Mallory v. Daniel Lumber Co., [Inc.]*, 191 Ga. App. 234, 235 (1) (381 SE2d 406) [(1989)]; *Insurance Co. of N. A. v. Fowler*, 148 Ga.

App. 509, 511 (2) (251 SE2d 594) [(1978)]; *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 52 (244 SE2d 573) [(1978)]; *Peoples Bank of LaGrange v. Ga. Bank &c. Co.*, 126 Ga. App. 768, 771-772 (1) (191 SE2d 876) [(1972)].

*Roberts v. Amalgamated Transit Union*, 205 Ga. App. 594, 595 (1) (423 SE2d 16) (1992).

A writ of certiorari was granted so that we might address the Court of Appeals' holding that there is no distinction between tort and contract cases with regard to the admissibility of collateral source evidence.

1. Appellee suffered a physical injury when the bus that he was operating was struck by an automobile and he certainly had a tort claim against the driver of that automobile. Insofar as the instant action is concerned, however, appellee's only "injury" was of a contractual nature, in the form of those wages which he would have allegedly earned if his employment with the Authority had not been terminated and the Union had not refused to pursue a grievance for his reinstatement.

In tort actions,

> it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. . . . [I]t is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.

Restatement (Second) of Torts, p. 514, § 920A, comment (b).

> Our tort law allows every person to recover the damages that result from torts committed to them. [Cits.] It is generally recognized . . . that [t]he "prophylactic" factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm.

*Denton v. Con-Way Southern Express*, supra at 42.[1]

---

[1] As the Court of Appeals held, *Denton* declared OCGA § 51-12-1 (b) unconstitutional. Although *Denton* was subsequently disapproved "to the extent that it suggests a new equal protection analysis[,]" *Grissom v. Gleason*, 262 Ga. 374, 376 (2) (418 SE2d 27) (1992), it was not disapproved to the extent that it declared OCGA § 51-12-1 (b) to be unconstitutional. See *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 179 (1) (421 SE2d 767) (1992).

Accordingly, in a *tort* action brought by appellee against the driver of the automobile, the collateral source rule would clearly be applicable and appellee would be entitled to an undiminished recovery of any and all wages that he may have lost as the result of his physical injury.

> The wrong-doer may show, in defense to a claim for lost time, that no time has been lost; and this of course is right and just, because if no time has been lost, no compensation is due from anybody on account of lost time. But if time has been lost as the result of a tort, sound sense, common justice, and it may be public policy would demand that the tort-feasor be prohibited from making a defense founded upon the proposition that he has been guilty of a wrong, — it may be a grievous and outrageous wrong, — but that some third person, not only not in sympathy with the wrong-doer, but despising him and his act, has, from some worthy motive, paid to the injured person an amount which, if it had come from the wrong-doer, would have equaled the damages which would have been assessed against him.

*Nashville, Chattanooga &c. R. Co. v. Miller*, 120 Ga. 453, 457 (3) (47 SE 959) (1904).

> Some have argued that the plaintiff might get a windfall if a jury is denied the right to know about the collateral sources, however, "[i]f there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing. [Cit.]" [Cit.]

*Denton v. Con-Way Southern Express*, supra at 46, fn. 5.

> The principle that a party's liability is not reduced by payments or other benefits received by the injured party from collateral sources is less compelling [, however,] in the case of a breach of contract than in the case of a tort.

Restatement (Second) of Contracts, p. 116, § 347, comment (e). This is true because of the inapplicability of the "prophylactic" factor as a consideration in contract cases and the countervailing applicability of the principle that "no one should profit more from the breach of an obligation than from its full performance." 22 AmJur2d 641, Damages, § 568. Thus,

> [i]t has been held that the collateral source rule does not ap-

ply to pure breach of contract cases. [Cit.] . . . "(I)t is basic to the law of contracts that the measure of damages is the plaintiff's injury, rather than the defendant's culpability."

*City of Miami Beach v. Carner*, 579 S2d 248, 253-254 (Fla. App. 1991). Unlike a tort action wherein the "prophylactic" factor is applicable, damages in a breach of contract case are awarded solely "as compensation for the injury sustained and '(a)n injured party can not be placed in a better position than he would have been in if the contract had not been breached.' [Cit.]" *Gainsville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 644 (1) (278 SE2d 182) (1981).

Accordingly, an evidentiary distinction between tort and contract cases *does* exist with regard to the applicability of the collateral source rule. The collateral source rule is applicable in *tort* cases because collateral source evidence *cannot* be admitted to diminish the defendant's liability for the *actual harm* that was caused by his tort. *Denton v. Con-Way Southern Express*, supra. However, the collateral source rule is not applicable in *contract* cases because collateral source evidence *can* be admitted if it is relevant to demonstrate the extent of the plaintiff's *actual loss* that was caused by the breach. Thus, evidence which would clearly be inadmissible in a tort case under the collateral source rule may nevertheless be relevant and admissible in a breach of contract case.

> The collateral source rule is punitive; contractual damages are compensatory. The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance.

*Patent Scaffolding Co. v. Wm. Simpson Constr. Co.*, 64 Cal. Rptr. 187, 191 (Cal.App. 1967). It follows that, in an action brought in this state by a discharged employee seeking to recover for breach of his contract of employment, " 'the measure of damages is the *actual loss* from the breach of the contract, and in estimating the amount *all facts* down to the time of the trial may be considered. [Cit]' [Cit.]" (Emphasis supplied.) *Sandt v. Mason*, 208 Ga. 541, 546 (2) (67 SE2d 767) (1952). In the instant case, therefore, the jury was entitled to consider "all facts" which were relevant to determining the "actual loss" of wages that appellee suffered as the result of the alleged breach of his employment contract.

2. The collateral source rule is an absolute evidentiary *bar*. In holding that the collateral source rule is applicable only in tort cases, we do not suggest that collateral source evidence is always admissible in breach of contract cases. That collateral source evidence is not ab-

solutely barred does not mean that it is absolutely admissible. Collateral source evidence may be admitted in breach of contract cases *if* it is relevant to demonstrate the extent of the plaintiff's actual loss that was caused by the breach. Collateral source evidence would not be admissible in the instant case merely because the collateral source rule is applicable only in tort cases. Such evidence would be admissible in the instant case only because it was relevant to demonstrate the amount of wages that appellee had actually lost as the result of the alleged breach of his employment contract.

*Peoples Bank of LaGrange v. Ga. Bank &c. Co.*, supra, is not inconsistent with our instant holding. Although the plaintiff in that case had sued for breach of contract, the defendant had counterclaimed in *tort*, alleging a conversion of funds and seeking compensatory, as well as punitive, damages and attorney fees. In securing summary judgment as to the counterclaim, the plaintiff had relied upon the defendant's receipt of funds from a collateral source. The Court of Appeals correctly reversed this grant of summary judgment, holding that the collateral source rule was applicable to the defendant's counterclaim in *tort* and that the plaintiff was, therefore, barred from defensive reliance upon the collateral source evidence.

Although *Ins. Co. of N. A. v. Fowler*, supra, is not entirely consistent with our instant holding, it need not be disapproved because the correct result was nevertheless reached therein. In *Fowler*, the owner of a home under construction had been issued a policy of insurance providing coverage for "the actual cash value of the property at the time of the loss." The contractor had been issued his own separate insurance policy covering his interest in the uncompleted home. When the home burned prior to completion, the contractor recovered under his policy. The homeowner's insurer, in unsuccessful defense of its obligation to pay "the actual cash value of the property at the time of the loss," relied upon the contractor's recovery under his policy. In affirming the non-viability of this defense, the Court of Appeals found that the "reasoning" of the collateral source rule was applicable. This was erroneous. Since the action was in contract, the "reasoning" of the collateral source rule was inapplicable. The ultimate holding in *Fowler* was, however, correct for a different reason. The legally correct reason why there could be no defensive reliance upon the contractor's recovery under his policy was that the homeowner's policy, as a contract of indemnity, provided its own measure of damages which contractually bound the homeowner's insurer. "The policy itself, once [an] insurable interest exists, determines the measure of damages, and fixes it as 'the actual cash value of the property at the time of loss.'" *American Ins. Co. v. Bateman*, 125 Ga. App. 189, 193 (2) (186 SE2d 547) (1971). Thus, the extent of the homeowner's covered loss was defined under the terms of the policy itself and the col-

lateral source evidence was not relevant to vary the insurer's liability for indemnification of the full extent of that covered loss as contractually defined.

Likewise, *Bituminous Cas. Co. v. Mowery*, supra, is not entirely consistent with our instant holding, but it need not be disapproved because the correct result was nevertheless reached therein. In *Mowery*, the collateral source rule was among the principles cited as authority for the proposition that a no-fault carrier could not rely defensively upon the claimant's receipt of workers' compensation benefits. This was erroneous. The claimant's action on the policy was in contract and the collateral source rule was, therefore, inapplicable. The ultimate holding in *Mowery* was, however, correct for a different reason. As in *Fowler*, the no-fault policy was a contract of indemnity providing its own measure of damages which contractually bound the no-fault carrier. Moreover, former OCGA § 33-34-8 (a), which was also cited as authority in *Mowery*, clearly rendered the collateral source evidence irrelevant and compelled the holding that the no-fault carrier could not rely defensively upon the claimant's receipt of workers' compensation benefits. That former statute provided: "The benefits payable under this chapter shall not be reduced or eliminated by any workers' compensation benefits . . . that the injured person is entitled to receive. . . ."

*Mallory v. Daniel Lumber Co.*, supra, is, however, inconsistent with our instant holding and must be disapproved. In *Mallory*, the owner of a commercial building sued the contractor, seeking damages allegedly sustained as the result of the contractor's failure to have met the contractually specified completion date. At trial, the contractor was permitted to introduce evidence that the delay had resulted, at least in part, from water damage caused by a defective water fountain and that the owner had been compensated by his insurance carrier for this water damage. On appeal, the Court of Appeals found that this evidence should have been excluded under the collateral source rule. This was erroneous. Since the case was in contract, the collateral source rule was inapplicable. The evidence was admissible because it was relevant to demonstrate the extent of the owner's loss which was attributable to the contractor's alleged breach of contract. If the delay was caused, in part, by water damage, the contractor would not be liable for all losses caused by the delay. If the owner had already been compensated for the loss caused by the water damage, an undiminished recovery against the contractor for all losses caused by the delay would constitute an unauthorized double recovery. Accordingly, the evidence regarding the owner's receipt of compensation from his insurer was admissible to prevent this unauthorized "windfall" and to demonstrate that his recovery would be limited to the amount of losses incurred as the result of the contractor's failure to

have performed.

3. If, at the time that an employee's employment is terminated, he was not earning the full wages that were specified in his contract, the "actual loss" of wages that he suffered as the result of the alleged breach of his employment contract would not be the amount of his full wages over the remaining term of the contract. If the employee was actually earning a lesser wage than that specified in his contract, this would be a relevant "fact" in determining the "actual loss" of wages that he suffered.

Thus, if appellee's *earning capacity* had been diminished as the result of his *pre-termination injury*, the Authority would *not* be contractually obligated to pay him his *full* wages. Being physically unable to work and earn his full contract wage at the time of his termination, appellee could not recover his full contract wage over the remaining period. Insofar as appellee had already been compensated for any lost wages caused by his pre-termination injury, an undiminished recovery for the full amount of wages specified in the contract of employment would constitute an unauthorized "windfall" recovery. He would not have lost the full amount of his wages *as the result of the alleged breach of his contract of employment*. The loss of wages was attributable, at least in part, to appellee's diminished earning capacity caused by his pre-termination injury.

We need not determine whether, in the instant case, the purported collateral source evidence was or was not admissible as relevant to prevent this unauthorized "windfall" and to demonstrate that appellee's recovery would be limited to the amount of "lost wages" incurred as the result of the alleged breach of his employment contract. Appellee's sole contention is that the evidence was absolutely barred by the collateral source rule and, as we have held, that broad assertion is unavailing in a contract case. The evidence *was* admissible if it demonstrated the amount of wages that appellee had actually lost as the result of the alleged breach of his employment contract. Appellee makes no contention that the evidence was not relevant for this purpose, only that, under the collateral source rule, the evidence was absolutely inadmissible.

Likewise, we need not approve or disapprove of the specific language employed by the trial court in its charge regarding the purported collateral source evidence. The Court of Appeals relied upon *Denton* and the applicability of the collateral source rule for its holding that, notwithstanding appellee's failure to have objected, the charge was erroneous as a matter of law pursuant to OCGA § 5-5-24 (c) and, as we have held, that reliance was misplaced in a contract case. The trial court charged that the purported collateral source evidence was to be considered solely on the limited issue of the amount, if any, of the lost wages which appellee could recover for the alleged

breach of his employment contract. The charge, as given, may not have been perfect, but, in the absence of any objection, it cannot be deemed erroneous as a matter of law pursuant to OCGA § 5-5-24 (c). Accordingly, the Court of Appeals erred in reversing the judgment that was entered on the jury's verdict and the judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed. All the Justices concur, except Hunt, P. J., and Hunstein, J., who concur in the judgment only.*

DECIDED SEPTEMBER 13, 1993 —
RECONSIDERATION DENIED OCTOBER 8, 1993.

*Walls & Corlew, J. Michael Walls,* for appellant (case no. S93G0081).

*Bouhan, Williams & Levy, Walter C. Hartridge,* for appellant (case no. S93G0132).

*Wayne B. Kendall,* for appellees.