## 77022. INSURANCE COMPANY OF NORTH AMERICA v. SMITH.

(375 SE2d 866)

Benham, Judge.

Appellee was injured while riding on a bus insured by appellant. In her attempt to recover lost wages for the time she was medically unable to work, she sued appellant, the insurer, who moved for sum-

mary judgment, contending that it had paid her all of the lost earnings to which she was entitled. The trial court ruled in appellee's favor, and that decision was upheld by this court. *Insurance Co. of North America v. Smith*, 183 Ga. App. 266 (358 SE2d 658) (1987). A trial was held on the issue whether appellant had acted in bad faith in refusing to pay the additional lost wage benefits appellee claimed. See OCGA § 33-34-6. The jury found that appellee's lost wage benefits had been paid, that appellee was entitled to a penalty of $551.25, attorney fees of $8,075, and punitive damages of $150,000. The trial court entered judgment to that effect, and denied appellant's motion for judgment n.o.v. and motion for new trial. Appellant again seeks relief from this court.

1. Appellant challenges the sufficiency of the evidence and contends that the trial court erred in denying its motions, arguing that the undisputed evidence showed appellant had acted in good faith since its refusal to pay lost wages was based on a reasonable legal opinion and evidence that the claim related to a job that had been terminated. In reviewing this type of case, the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer. *Ga. Farm Bureau &c. Ins. Co. v. Bestawros*, 177 Ga. App. 667 (1) (340 SE2d 645) (1986). Appellee was required to establish "with reasonable certainty [her] entitlement to benefits for loss of income or earnings during the period of [her] disability by showing that [she] 'had accepted an offer of income-generating employment or has had a continuous pattern of employment prior to the period of disability.' [Cit.]" *Insurance Co. of North America v. Smith*, supra, Division 1. The evidence adduced at trial showed that appellee had included on her original application for personal injury benefits (PIP) the fact that she had been employed from 1980 to 1984 by Mary Payne. That information, coupled with her listing of her employer at the time of the accident, Industrial Housekeeping, was sufficient to support a finding that she had a continuous pattern of employment prior to the period of disability. She proved the amount of benefits to which she was entitled with her wage statement showing her lost income with Industrial Housekeeping. There being enough evidence to support the jury's conclusion that the award of benefits in question was warranted, it fell to the insurer to show a reasonable defense vindicating its good faith in failing to make the award in the appropriate period of time.

Appellant's defense was that it only received a wage verification from Industrial Housekeeping that showed an August 31, 1984, termination date, and having no reasonable proof that appellee was entitled to more, it only paid the claim relating to that time period. It also contended that further proof of the fact or amount of appellee's

wage loss was not offered until after she filed her lawsuit. However, the record shows that appellant did not seek any further proof, nor did it make appellee aware that further proof would be needed. In its letter of inquiry dated December 13, 1984, apparently in response to the PIP application, the claims adjuster requested that a wage and salary verification be completed by "Ms. Smith's *employer*," and when appellee responded by sending the form executed by "the Payroll Clerk of HIH Services, Inc." (for Industrial Housekeeping), appellant did not inquire further about the employment with Mrs. Payne that had been indicated on the original PIP application. As for appellant's claim that it acted on the advice of its legal counsel in not paying the full amount of benefits, it was shown that the legal advice was based on the claims adjuster's representation to the attorney that the only wage verification received was that from HIH Services, showing the August 31 termination date. At the time the advice was given, the attorney was not aware that appellee had raised a continuous history of employment issue through the information she supplied on the PIP application, and that the adjuster had not pursued that issue. Appellee did provide additional information supporting her claim once it was sought in the course of the lawsuit, and that information was available and could have been supplied earlier had appellant sought it.

Whether appellant acted in bad faith was an issue for the jury to decide. In refusing to pay after appellee's due demand, the insurer acted at its peril, "a peril neither increased nor diminished by the amount of information it might have or obtain, but only by the weakness or strength of its defense as manifested at the trial . . . [A]ny defense not manifesting such reasonable and probable cause [for making it] would expose the company to the imputation of bad faith and to the assessment of damages therefor under . . . the Code." *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 50 (244 SE2d 573) (1978). There being some evidence to support the jury's finding of bad faith and the subsequent assessment of damages, we affirm the judgment.

2. Appellant claims that the trial court erred in denying it the right to make the opening and concluding arguments at the close of the evidence. It contends that since it had the burden of proof under OCGA § 33-34-6 (c), it should have been allowed to open and close. Assuming, but not deciding, that appellant was entitled to claim the right to opening and closing argument, its failure to claim that right until both parties had submitted all of their evidence constituted a waiver of the right. "The rule is that this right to open and conclude must be claimed before testimony by the other party is submitted. [Cits.]" *International Indem. Co. v. Coachman*, 181 Ga. App. 82 (6) (351 SE2d 224) (1986).

3. On the issue of punitive damages, the trial court charged the jury that "[p]unitive damages are awarded to deter a person from doing something again or because of the wounded feelings of the injured person." Appellant cites the charge as error, arguing that the "wounded feelings" statement provided the jury with an unauthorized basis for appellee to recover. We find no error in the charge as given. It is an accurate restatement of the principle from OCGA § 51-12-5, which defines punitive damages. Appellant's contention that the charge allows for a double recovery has no merit, inasmuch as the cases upon which it relies contain a charge that allows for such damages to be awarded to deter conduct *and* compensate for wounded feelings. The trial court used the disjunctive "*or*" in giving the charge, in accordance with the statute. Nor do we find any merit in the argument that the definition in § 51-12-5 does not apply to punitive damages in anything other than tort cases. OCGA § 33-34-6 (c) specifically provides for punitive damages, but does not define the term. Therefore, it was proper for the trial court to use the statutory definition provided in § 51-12-5 in the absence of provisions to the contrary. The insurer's assertion that there was no evidence supporting appellee's "wounded feelings" is also groundless. " 'Wounded' feelings are such as result from indignities to the self-respect, sensibilities, or pride of a person, as distinguished from the usual mental pain and suffering consequent to a physical injury." *Interstate Life &c. Co. v. Brewer*, 56 Ga. App. 599 (5) (193 SE 458) (1937). The record shows that as a result of appellant's delay of payment, appellee was reduced to living from her daughter's Social Security check and food stamps; she was unable to pay her bills and her furniture was repossessed; and she was unable to retain her credit cards and her insurance. That was sufficient evidence to justify the charge on "wounded feelings," and, contrary to appellant's assertion, the evidence was admissible to show the extent to which appellee was "wounded" by appellant's conduct. The testimony went directly to the issue of punitive damages, and the cases upon which appellant relies do not involve punitive damage claims. The trial court did not err in its rulings.

4. Appellant also complains that the trial court's charge on bad faith was inadequate. The trial court instructed the jury that it was to determine whether or not the insurer's refusal to pay appellee's claim was justified at the time it originally refused to pay it; that if it was, then appellee would not be entitled to recover the penalty, attorney fees, or punitive damages; that the insurer had a right to contest a claim, but it was also required to make a good faith effort to make a determination and pay on time; and that if the jury found that appellant's refusal was frivolous or for some unfounded reason, appellee would be entitled to recover, but that if the refusal was in good faith and timely, appellee would not be entitled to recover. Appellant ob-

jected to the trial court's rejection of its request to charge which stated: "Bad faith means a frivolous or unfounded refusal in law or in fact to pay the loss according to the insurance contract. If you find that the refusal of defendant to pay the lost wage claim . . . was not frivolous or unfounded in law . . . then your verdict should be in favor of [appellant]." Although the trial court's charge did not match exactly the one appellant offered, it covered the salient points adequately. Viewing the charge as a whole, we find that was sound. "[W]here the charge as a whole substantially presents issues in such a way as is not likely to confuse the jury . . . an appellate court will not reverse a verdict authorized by the evidence. [Cit.] . . . The failure of the court to give a requested charge in the exact language requested, where the charge given covered the same principle of law, is not a ground for a new trial. [Cit.]" *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380 (4, 5) (277 SE2d 753) (1981).

5. Another enumeration appellant raises is the trial court's alleged error in failing to charge the jury that this court's earlier ruling of appellee's eligibility for benefits was not determinative of the issue submitted to the jury, but that the jury should determine the insurer's good faith based upon the law as it existed when appellant denied appellee's additional claim. The trial court instructed the jury that "the fact that the insurance company has now come in and paid it, ladies and gentlemen, is not an admission on their part that it was due at the time they originally refused to pay it. But it is for you to determine whether the refusal was justified at that time or not, and if it was, and if in good faith . . . then the plaintiff would not be entitled to recover the penalty, attorney's fees, or punitive damages." We find that that statement was sufficient to cover the point appellant sought to make.

6. Appellant also contends the trial court made an impermissible comment on the evidence and improperly charged the jury that appellee was entitled to recover if she proved she had a loss of income during her period of disability, and that she either accepted an offer of income-generating employment or had a continuous pattern of employment prior to her disability. The insurer argues that that was not the state of the law on August 31, 1984, the time at which appellee was denied further benefits. The insurer is incorrect. In *Leonard v. Preferred Risk Mut. Ins. Co.*, 247 Ga. 574 (1) (277 SE2d 675) (1981), our Supreme Court stated, "While it is not essential to recovery of lost income benefits that the injured party actually be earning income on the date of injury, he must, at a minimum, have accepted an offer of income-generating employment or have a continuous pattern of employment prior to the period of disability. [Cits.]" That being the state of the law at the time in question, and that information having been brought out at trial, the trial court did not err in making its

statements.

7. In its last enumeration involving the jury charge, appellant claims the trial court misled the jury into believing that if it found the insurer's failure to pay was in bad faith, the jury was required to award a 25 percent penalty, attorney fees, and punitive damages. It also contends that the jury verdict form directed such a result. We disagree. Both the trial court's instructions and the verdict form made it clear that the jury could exercise the option of making one, two *or* all three awards, in any amount it so chose within the statutory limits. See, e.g., the portion of the jury charge quoted in Division 5 of this opinion. The verdict form was subdivided into parts (a), (b), (c), and (d), one for each of the items (plaintiff's loss, penalty, attorney fees, and punitive damages) on separate lines with separate spaces for different amounts to be filled in for each item. The explanation and the form could not have been more clear. No error was committed.

8. The jury returned a verdict of $150,000 in punitive damages, which appellant, relying on *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (365 SE2d 827) (1988), contends was excessive as a matter of law. That case is distinguishable from the one before us for a number of reasons. The injury suffered in *Colonial* was to property only, no bodily injury having been suffered by the plaintiff, and the negligence in question was considered "passive." That was not the situation here. Appellee suffered physical injury, not property damage, and appellant's decision not to pay was an "intentional and deliberate" one. Id. at 121. We must also note that appellee suffered the indignities that can result from a prolonged loss of income, and it was properly left up to the jury to assess to what extent appellant should be made to feel the impact of its actions on claimants to prevent similar situations from occurring in the future. The punitive damages awarded appellee were not one hundred times the total of actual and consequential damages, as was the case in *Colonial Pipeline*. These reasons make this situation a unique one, and, under the circumstances, "we do not have the temerity to propose that our ivory tower evaluation should be substituted for that of [12] jurors plus the . . . trial judge . . . who as 'the 13th juror' have decided the conduct of [appellant] was such that exemplary damages of [$150,000] should be awarded 'either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff.' [Cit.]" *Jones v. Spindel*, 128 Ga. App. 88, 94 (2c) (196 SE2d 22) (1973).

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

Mozley, Finlayson & Loggins, Sewell K. Loggins, D. Keith Calhoun, for appellant.

Mills & Freeman, W. Franklin Freeman, Jr., James A. Vaughn, for appellee.