**Gerlinde G. RYAN, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant–Appellee.

No. 90–8678.

United States Court of Appeals,
Eleventh Circuit.

June 19, 1991.

Samuel W. Oates, Jr., Columbus, Ga., for plaintiff-appellant.

William B. Hardegree, Hatcher, Stubbs, Land, Hollis & Rothschild, Columbus, Ga., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI, SECTION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of Georgia law that is determinative of the cause but unanswered by controlling precedent of the Supreme Court of Georgia or any other Georgia appellate court. We therefore certify the question for resolution by the highest court of Georgia.

## I. STYLE OF THE CASE

The style of the case in which this certificate is made is as follows: *Gerlinde G. Ryan v. State Farm Mutual Automobile Insurance Company*, Case No. 90–8678, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Georgia, Columbus Division.

## II. JURISDICTION

■ As an initial matter, we must resolve a question relating to our court's jurisdiction. This case involves the allocation of expenses under different provisions of a no-fault automobile insurance contract. The district court's jurisdiction was based upon diversity; at the time of filing, an amount in controversy exceeding $10,000 was required to support such jurisdiction.[1] Although the parties differ by less than five hundred dollars as to the total amount to be rendered by appellee State Farm, appellant Gerlinde G. Ryan's claim for punitive damages due to the insurance company's refusal to pay raises the amount in controversy to a sufficient level to acquire federal jurisdiction.[2] In her original complaint filed in state court, Ryan requested $100,000 in punitive damages for the insurance company's wrongful refusal to pay her claim. As it is possible for a jury to award this much in punitive damages under Georgia law, jurisdiction exists. For example, in *Insurance Co. of North America v. Smith*,[3] the Georgia appellate court affirmed a jury's award of punitive damages in the amount of $150,000 on a claim of bad faith refusal to pay.[4]

## III. BACKGROUND

On September 3, 1988, Frank D. Ryan died from injuries sustained in a collision with another vehicle. Ryan was pronounced dead at the scene of the accident. The deceased and appellant were the named insureds under an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company. The policy provided for coverage "P" limits of $5,000.00—the basic no-fault personal injury protection coverage provided for by the Georgia Motor Vehicle Accident Reparations Act.[5]

The amount payable under coverage "P" was subject to an aggregate limit of $5,000.00. Of this amount, up to $2,500.00 was payable for medical expenses and up to $1,500.00 was payable for funeral expenses. The "survivors' loss" benefit provided that it was "compensation paid if an insured dies as a result of the accident. It is payable as though the deceased were alive but totally disabled." State Farm's limits of liability under coverage "P" were stated in the policy as follows (emphasis omitted):

1. The Most We Pay

    The most we pay for each benefit for an insured is limited to the amount shown in the Schedule for that benefit under your coverage symbol. Under "Aggregate Limit" is the total amount of coverage for all loss and expense due to bodily injury to one insured.

The Ryans' policy of insurance also provided for an additional "Medical Payments" coverage, denominated as coverage "C", with a limit of $5,000.00, including a maximum of $2,500.00 payable for funeral services and expenses. The medical payments coverage appears to be optional, nonstatutory no-fault insurance.[6] The limits of liability under coverage "C" were stated as follows:

1. The amount of coverage for medical expenses, including funeral services, is shown on the declarations page under

---

1. 28 U.S.C. § 1332(a).

2. *See* O.C.G.A. § 33–34–6(c).

3. 189 Ga.App. 353, 375 S.E.2d 866 (1988).

4. 375 S.E.2d at 870–71; *cf. Wiggins v. North Am. Equitable Life Assurance Co.*, 644 F.2d 1014 (4th Cir.1981) (no punitive damages ever allowed under Maryland law for breach of contract; therefore, insufficient amount in controversy).

5. O.C.G.A. §§ 33–34–1 to 33–34–17.

6. *See Ethridge v. Travelers Indem. Co.*, 186 Ga. App. 812, 368 S.E.2d 542, 543–44 (1988).

"Limit of Liability—Coverage C—Each Person". If the amount shown is $2,500 or more, the most we pay for funeral services is $2,500 per person.

2. This coverage is excess over any medical or funeral expense paid or payable under the no-fault coverage of this or any other policy.

The total amount of the funeral and burial expenses for the deceased was $3,619.25. The only medical expense incurred as a result of Frank D. Ryan's injury and death was $75.00 for an ambulance.

This litigation arose out of a dispute between appellant Gerlinde G. Ryan and appellee State Farm over the allocation of costs under the policy. Appellant contends that the entire $5,000.00 available under coverage "P" should be counted as survivors' loss benefits. Under her interpretation, she would also receive the entire $2,500.00 in funeral expenses provided for

by coverage "C", as well as $75.00 for the ambulance. Appellant's interpretation yields a payment on the policy of $7,575.00.

State Farm emphasizes that the policy states that coverage "C" is "excess over any medical or funeral expense paid or *payable*" under coverage "P". State Farm therefore maintains that the funeral and ambulance expenses must first be deducted from the $5,000.00 provided for by coverage "P". This would leave $3,425.00 as the survivors' loss benefit. Because $1,500.00 of the funeral expenses would be paid under coverage "P", coverage "C" would pay the remainder of the funeral expenses, $2,119.25. State Farm's allocation of expenses yields a total payment of $7,119.25. Thus, the parties differ from each other by only $455.75. The following chart may be helpful in comparing the parties' allocations of expenses:

| COVERAGE | APPELLANT | STATE FARM |
|---|---|---|
| "P" (No–Fault) | $5,000.00 (survivor) | $3,425.00 (survivor) |
| | | $1,500.00 (funeral) |
| | | $ 75.00 (ambulance) |
| "C" (Medical) | $2,500.00 (funeral) | $2,119.25 (funeral) |
| | $ 75.00 (ambulance) | |
| TOTAL | $7,575.00 | $7,119.25 |

## IV. DISCUSSION

Although the parties differ by only a small amount, we believe that this case raises an important and unsettled question of Georgia law: Whether, under the terms of the policy, survivors' loss benefits automatically exhaust all of the benefits available under the personal injury protection coverage?

O.C.G.A. § 33–34–8(d) states: "Medical payment benefits and uninsured motorists' benefits payable under coverages in motor vehicle insurance policies shall be excess over any benefits required by this chapter." The benefits required by the chapter are those that result from both the mandatory and optional no-fault insurance laws.[7]

Section 33–34–8(d) has been described as "only evinc[ing] the legislative intent that such benefits as may be available under the medical payments coverage of a policy are not to be paid until all applicable benefits under the no-fault coverage of the policy have been exhausted."[8]

Our interpretation of the language just quoted indicates that it is settled law in Georgia that an insured cannot receive benefits under a medical payments coverage until the full amount of the no-fault coverage has been paid out, but this does not decide the question of what it means to "exhaust" the no-fault coverage. In *State Farm Mutual Automobile Insurance Co. v. Acheson,*[9] a case involving an insured

7. *See Hall v. State Farm Mut. Auto. Ins. Co.,* 254 Ga. 633, 331 S.E.2d 530, 531 (1985).

8. *Cincinnati Ins. Co. v. Westbrook,* 188 Ga.App. 511, 373 S.E.2d 386, 387–88 (1988).

9. 182 Ga.App. 218, 355 S.E.2d 128 (1987).

who was covered both by mandatory and optional no-fault insurance, the Court of Appeals of Georgia held that the insured's allocation of expenses between personal injury protection and medical payments benefits should control: "[T]he coverage of the policy issued by State Farm should have been utilized so as to be most beneficial to the insured and the beneficiaries."[10] The court's opinion in *Acheson* relied both on the principle that "benefits should be allocated so as to maximize coverage"[11] and on a provision of the optional no-fault insurance statute mandating that insureds should be allowed to allocate expenses when they possess optional no-fault insurance.[12]

Here, the principle that "benefits should be allocated so as to maximize coverage" similarly favors following appellant's allocation of expenses. But the second factor relied upon in *Acheson*—the provision of the optional no-fault statute—is not relevant, as the medical payments coverage does not seem to be written within the provisions of the optional no-fault insurance statute. Therefore, it is unclear under Georgia law whether appellant's or State Farm's allocation of expenses between the personal injury protection and the medical payments coverages should govern.[13]

10. 355 S.E.2d at 130.

11. 355 S.E.2d at 129.

12. 355 S.E.2d at 129–30 ("[T]he language of OCGA § 33–34–5(a)(1) ... directs that optional no-fault benefits be paid 'as determined by the insured without apportionment' to cover certain listed expenses and entitlements, including those at issue in this case.").

13. *Cf. Holloway v. State Farm Mut. Auto. Ins. Co.,* 370 So.2d 452, 454 (Fla.Dist.Ct.App.1979) (holding that insureds could choose to exhaust PIP coverage through payments for lost income and to have medical bills paid out of medical payments coverage; "Since the [insureds] had

## V. CERTIFIED QUESTION

Because of our uncertainty as to the status of Georgia law on the question raised by this case, we certify the following question to the Supreme Court of Georgia:

Under the terms of the insurance policy in this case, does Georgia law support the insured's allocation of payments such that survivors' loss benefits completely exhaust the available personal injury protection coverage and that all medical and funeral expenses are therefore paid out of the excess medical payments coverage?

The clerk of the court is directed to transmit this certificate, as well as the entire record and the briefs of the parties, to the Supreme Court of Georgia. Pending the Georgia Supreme Court's answer to the foregoing certified question, all further proceedings in this appeal are STAYED.

QUESTION CERTIFIED.

the right to have their claims for loss of income paid out of their PIP coverage before having any medical bills paid out of such coverage, the [insurer] was not entitled to a summary judgment on the grounds that it properly paid the medical bills out of the PIP coverage because such coverage was 'primary.' "). *See generally* 15A M. Rhodes, *Couch on Insurance 2d,* § 56:30, at 36–42 (rev. ed. 1983) (discussing construction of medical payments coverages); Annotation, *Coverage, Construction, and Effect of Medical Payments and Funeral Expense Clauses of Liability Policy,* 42 A.L.R.2d 983, 984 (1955) ("The liability of the insurer for medical or funeral expenses under such a provision depends, of course, upon the construction of the particular language used in the contract.").