Ernest Ray KITCHEN and Carolyn D. Kitchen, Individually and as Natural Parents of John David Kitchen, Deceased, and Ernest Ray Kitchen, as Personal Representative of the Estate of John David Kitchen, Deceased, Plaintiffs–Appellants,

v.

CSX TRANSPORTATION, INC., Etc., Defendants,

County of Elbert, Georgia; Billy Ray Brown, Etc.; William B. Smith, Etc., Defendants–Appellees,

Landmark American Insurance Company, Defendant.

No. 92–8202.

United States Court of Appeals, Eleventh Circuit.

Nov. 8, 1993.

---

Billy Earnest Moore, Columbus, GA, William T. Gerard, Gerard & Matthews, Athens, GA, for plaintiffs-appellants.

Jack Harrell Senterfitt, Alston & Bird, Atlanta, GA, for defendants-appellees.

Cynthia G. Weaver, Robert M. Heard, Heard Leverett & Phelps, Elberton, GA, for County of Elbert and Brown.

Before ANDERSON and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

This is a wrongful death action arising out of an automobile accident that occurred in May of 1988 while the deceased, John David Kitchen, was traveling on a county road in Elbert County, Georgia. Plaintiffs, the parents of the deceased and the personal representative of the estate of the deceased, filed this lawsuit against Elbert County; Billy Ray Brown, the Chairman of the Elbert County Board of Commissioners; William B. Smith, the Road Superintendent for Elbert County; and others. The district court found that Elbert County, Brown, and Smith (the "Elbert County defendants") were entitled to sovereign immunity; accordingly, the district court entered an order granting the Elbert County defendants' motion for summary judgment and denying plaintiffs' motion to amend their complaint. We affirm the district court's grant of summary judgment in favor of Elbert County, but reverse the grant of summary judgment in favor of Brown and Smith. We vacate the district court's denial of plaintiffs' motion to amend their complaint and remand the case for further proceedings consistent with this opinion.

## BACKGROUND FACTS

At all times relevant to this litigation, Brown has been the Chairman of the Elbert County Board of Commissioners and, as such, has been responsible for the Elbert County roads. Smith has been at all relevant times the Road Superintendent for the county. The accident giving rise to this litigation occurred while the deceased was operating his vehicle on Elbert County Road Number 77. The stretch of road on which the accident occurred had at one time included a timber bridge, which crossed over railroad tracks owned by Seaboard Coast Line Railroad (now CSX Transportation). By 1979, this bridge had been damaged by passing trains and had deteriorated, and the stretch of road on which the bridge lay was no longer necessary to through traffic due to nearby state highway number 72. Accordingly, the railroad and the county entered into an agreement pursuant to which the railroad agreed to remove the bridge and the county agreed to furnish the necessary barricades and signs to indicate that the road was closed.

In 1979, the railroad removed the timber bridge on county road 77, and the bridge was not replaced. Thus, county road 77 terminated on either side of the gulch over which the bridge had run. The regulations governing public roadways in Georgia [1] provide for erection of a specific type of barricade at the termination of a roadway; the barricade should have three horizontal boards extending completely across the roadway and should be painted with alternating stripes of "reflectorized white and reflectorized red." [2] No such barricade was ever erected at the termination of county road 77.[3] Rather, at Brown's direction, county employees built "a barricade of rock and dirt" [4] on the road on either side of the gulch over which the bridge had run. County employees also placed "dead end" signs at the point where county

1. *Manual on Uniform Traffic Control Devices for Streets and Highways,* U.S. Department of Transportation Federal Highway Administration (1978); R3–42 Exh. B. This manual, which is promulgated by the United States Department of Transportation, has been adopted by the Georgia State Transportation Board as the official uniform regulations governing the public roads of Georgia. O.C.G.A. § 32–6–50(a); R3–42 ¶ 7 and Exh. A. Pursuant to state statute, counties are obligated to conform to these regulations in maintaining the public road systems under their control. O.C.G.A. § 32–6–50(c).

2. *Manual on Uniform Traffic Control Devices* (R3–42 Exh. B) at 3F–1 and 6C–4 through 6C–8.

3. October 8, 1991, deposition of Brown at 22.

4. R2–33, April 18, 1990, deposition of Brown at 22.

road 77 turns off of state highway number 72 and at the barricade.[5] It is undisputed that, between 1979 and John David Kitchen's accident in 1988, the county did nothing further with respect to the barricades or the signs on this stretch of road.[6] It is also undisputed that both Brown and Smith were generally aware of the condition of the barricades over this period of time;[7] Brown was on this stretch of road at least six times a year between 1979 and 1988,[8] and Smith was on it at least once a year.[9]

In the early morning of May 22, 1988, John David Kitchen drove his pick-up truck along county road 77 and over the "rock and dirt" barricade, or what was left of this barricade. The truck plunged over the precipice created by the removal of the timber bridge and onto the railroad track below. Approximately three hours later, a train collided with the truck. Kitchen was pronounced dead at the scene.

Witnesses who observed the scene after the accident attested that there were no signs or traffic control devices of any sort at or near the precipice where the bridge had been.[10] Witnesses attested that there were "small piles of dirt on Elbert County Road No. 77 at either side of the location where the roadway bridge no longer existed...."[11] These small piles of dirt apparently were what was left of the "rock and dirt" barricade the county had constructed nearly ten years earlier. One expert said that these piles of dirt "did not provide an obstruction or restriction to the passage of motor vehicles, gave no visual warning that the bridge was out, and, in fact, served as positive ramps producing a vaulting effect which caused a raised trajectory of the Kitchen vehicle and thereby increased the horizontal distance travelled by the vehicle during its vertical fall to impact with the railroad right of way below."[12] The Georgia state patrolman who investigated Kitchen's accident attested:

> Several nights after the incident had occurred, I went back to the accident site to observe the appearance of the location in the dark with headlights burning; and personally observed that the vehicle lights would not pick up the fact that there was no bridge in existence, that you could not see that the bridge was out, that the dirt pile in the road gave the appearance that the pavement ended and a dirt road continued, and that no official/approved traffic control devices or barricade existed which would give warning that the bridge was out.[13]

Plaintiffs filed this action against CSX Transportation (as successor to Seaboard Coast Line Railroad), Elbert County, Brown, Smith, and Landmark American Insurance Company, the insurer for Elbert County. Plaintiffs alleged that defendants "acted knowingly, wantonly, recklessly and with such entire want of care as to raise the presumption of a conscious indifference to the consequences by failing and refusing to place and maintain effective signs, barricades or other warning and protective devices" at the precipice created by the removal of the timber bridge.[14] Plaintiffs also alleged that defendants acted negligently in failing to place and maintain proper signs and barricades. By agreement of the parties, the question of insurance coverage was decided in a state court lawsuit arising out of another accident that occurred at the same location as did Kitchen's accident. The Georgia state courts determined that the claims raised in this litigation, as well as the claims raised in the state court lawsuit, were excluded from coverage of the liability policy owned by the

---

5. *Id.* at 23.

6. *Id.* at 22–23.

7. October 8, 1991, deposition of Brown at 53; October 8, 1991, deposition of Smith at 66.

8. October 8, 1991, deposition of Brown at 53.

9. October 8, 1991, deposition of Smith at 42.

10. R3–39–5–6; R3–40–4–5; R3–41–8.

11. R3–41–8; *see also* R3–40–6.

12. R3–41–9.

13. R3–39–6–7.

14. R1–18–9.

county.[15] Thus, there is no insurance coverage for plaintiffs' claims against the Elbert County defendants.

After the Georgia state courts resolved the insurance coverage issue, plaintiffs filed a motion to amend their complaint to make "clear and certain that they seek relief ... for acts and conduct of the Defendants involving reckless disregard for the safety of others,"[16] as well as for acts and conduct involving negligence. Shortly thereafter, the Elbert County defendants filed a motion for summary judgment. This motion addressed plaintiffs' negligence claims only; it did not address plaintiffs' claims that defendants had acted "wantonly, recklessly, and with such entire want of care as to raise a presumption of a conscious indifference." Rather, in a separate pleading, the Elbert County defendants opposed plaintiffs' motion to amend the complaint, arguing that the proposed amendment was untimely and that it "attempts to state a new cause of action against these Defendants for 'reckless disregard of the safety of others.'"[17]

The district court entered an order denying plaintiffs' motion to amend their complaint and granting the Elbert County defendants' motion for summary judgment. The court found that the county had not waived sovereign immunity because there was no liability coverage for plaintiffs' claims; that Brown's actions with respect to county road 77 were discretionary (as opposed to ministerial) in nature and, therefore, he was entitled to sovereign immunity; and that there was no evidence that Smith had any duties or responsibilities with respect to the barricades on county road 77 and, even if he did, they were discretionary in nature. The district court entered judgment in favor of the Elbert County defendants pursuant to Fed. R.Civ.P. 54(b), and plaintiffs appealed.[18]

## DISCUSSION

### A. Summary Judgment for Elbert County

■ The state of Georgia is immune to suit for any cause of action unless sovereign immunity is expressly waived by constitutional provision or statute. This sovereign immunity extends to counties, as subdivisions of the state.[19] Under the Georgia Constitution a county waives its sovereign immunity to the extent of liability insurance coverage.[20] Thus, when the plain terms of the county's insurance policy provide that there is no coverage for a particular claim, the policy does not create a waiver of sovereign immunity as to that claim.[21] In this case, the Georgia courts conclusively decided that Elbert County's liability insurance policy does not provide coverage for plaintiffs' claims against the county. Accordingly, Elbert County did not by purchase of this policy waive its sovereign immunity as to plaintiffs' claims.

■ Notwithstanding the county's sovereign immunity, plaintiffs argue that they may recover from the county under a nuisance theory. The Georgia Constitution provides that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."[22] Relying on this constitutional provision, the Georgia courts have held that, when a county causes a nuisance to exist that

**15.** *Callaway v. Landmark American Insurance Co.*, 199 Ga.App. 656, 405 S.E.2d 721 (1991), *cert. denied* (June 20, 1991).

**16.** R2–30–3–4.

**17.** R3–35–2.

**18.** At the time this appeal was filed, plaintiffs claims against CSX Transportation were still pending before the district court.

**19.** Ga. Const. art. 1, § 2, ¶ 9 (amended 1990); O.C.G.A. § 36–1–4 (1993); *James v. Richmond County Health Department*, 168 Ga.App. 416, 309 S.E.2d 411, 412 (1983).

**20.** Ga. Const. art. 1, § 2, ¶ 9(a) (amended 1990). A constitutional amendment that rewrote this paragraph was approved by a majority of the qualified voters voting in the general election on November 6, 1990. The Georgia Supreme Court has determined that this amendment is to be applied prospectively only. *Donaldson v. Department of Transportation*, 262 Ga. 49, 414 S.E.2d 638, 641 (1992). Accordingly, the amendment is not applicable to this litigation.

**21.** *Dugger v. Sprouse*, 257 Ga. 778, 364 S.E.2d 275 (1988).

**22.** Ga. Const. art. 1, § 3, ¶ 1.

amounts to a taking of property of one of its citizens for public purposes, the county is liable.[23] The county's liability is limited, however, to those damages recoverable in a condemnation action, that is, the decrease in the market value of the affected property.[24] The Georgia courts have specifically held that a county's liability for maintenance of a nuisance does not extend to personal injury damages: "The general rule is that this principle is not applicable to actions for personal injury damages and that the principle, based upon the eminent domain powers of the sovereign, does not contemplate the 'taking' of a human being."[25] Accordingly, plaintiffs in this case cannot recover from Elbert County under a nuisance theory for the wrongful death of John David Kitchen. The district court did not err in granting summary judgment in favor of Elbert County.

### B. Summary Judgment for Billy Ray Brown

■ Under Georgia law, whether the sovereign immunity of a county extends to a county employee depends on whether the employee's alleged negligent acts are ministerial or discretionary in nature; a county employee may be liable for the negligent performance of a ministerial act, but is entitled to immunity for the negligent failure to perform a discretionary duty.[26] A ministerial act is " 'one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.' "[27] A discretionary act, on the other hand, " 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' "[28] Whether the acts of a public official are ministerial or discretionary is determined by the facts of the particular case.[29]

Brown's allegedly negligent acts in failing to erect and maintain appropriate barricades and signs at the termination of county road 77 are very similar to the negligent acts at issue in *Joyce v. Van Arsdale.* In *Joyce*, the county commissioners had decided to close, rather than repair, a bridge. The commissioners instructed Van Arsdale, the county road superintendent, to take the necessary steps to close the bridge. Van Arsdale delegated the responsibility for closing the bridge to Grimes, the assistant road superintendent and supervisor of a work crew. Grimes and his crew constructed a barricade and posted signs along the highway leading to the closed bridge. The plaintiff was injured when she drove her automobile across the bridge and hit the barricade, which had been partially dismantled. The trial court held that Van

**23.** *Miree v. United States,* 242 Ga. 126, 249 S.E.2d 573, 578–79 (1978); *Reid v. Gwinnett County,* 242 Ga. 88, 249 S.E.2d 559, 560 (1978).

**24.** *DeKalb County v. Orwig,* 261 Ga. 137, 402 S.E.2d 513, 514 (1991); *Wilmoth v. Henry County,* 251 Ga. 643, 309 S.E.2d 126, 127 (1983).

**25.** *Wilmoth,* 309 S.E.2d at 127; *see also Miree,* 249 S.E.2d at 578–79. Plaintiffs argue that the inquiry does not end with the rule as stated in *Wilmoth* and *Miree* because the Georgia Supreme Court, more recently, has indicated a willingness to reconsider the limitation on a county's liability for a nuisance. Specifically, plaintiffs rely on a footnote in *Donaldson,* which states, in part: "We have not been asked to reconsider here the continuing authority of *Miree v. United States* and *Wilmoth v. Henry County* [citations omitted]." 414 S.E.2d at 642 n. 1. Plaintiffs argue that this statement is sufficient to create an ambiguity in the Georgia law sufficient to justify certifying a question to the Georgia Supreme Court. We disagree. It is unclear whether the quoted statement is a reference to the rule regarding a county's liability for a nuisance or to

other issues in *Miree* and *Wilmoth,* such as the waiver of sovereign immunity by purchase of liability insurance. The statement is insufficient to raise a question as to the continuing authority of *Miree* and *Wilmoth* and their progeny. Accordingly, certification of a question is not appropriate. *See Ryan v. State Farm Mutual Automobile Insurance Co.,* 934 F.2d 276, 276 (11th Cir.1991) (certification appropriate when controlling question is "unanswered by controlling precedent of the Supreme Court of Georgia or any other Georgia appellate court").

**26.** *Joyce v. Van Arsdale,* 196 Ga.App. 95, 395 S.E.2d 275, 276 (1990) (citing *Logue v. Wright,* 260 Ga. 206, 392 S.E.2d 235 (1990)), *cert. denied* (Sept. 4, 1990).

**27.** *Id.* (quoting *Miree v. United States,* 490 F.Supp. 768, 774 (N.D.Ga.1980)).

**28.** *Id.*

**29.** *Nelson v. Spalding County,* 249 Ga. 334, 290 S.E.2d 915, 918–19 (1982).

Arsdale and Grimes were entitled to sovereign immunity. The Georgia Court of Appeals reversed. The court held that the acts of Van Arsdale and Grimes with respect to the closing of the bridge were ministerial in nature because these two officials "were carrying out a specific task which became necessary after the discretionary decision making body, the commission, made the decision to allocate county funds to close the bridge rather than repair it." [30] The Court of Appeals explained:

> Should the county decide when a street should be opened, closed, or repaired, or when a sewer should be built, it is clearly exercising legislative or judicial functions, but when it engages in the work of opening, closing, or repairing a street, or building a sewer, and is thus engaged in the physical execution of the work, it is evidently in the discharge of duties purely of a ministerial nature. It follows that the actual progress of such work by a county is of a ministerial character, and that the duties of a road supervisor in carrying out the physical details of the work are likewise ministerial in nature.... Although Grimes' acts undoubtedly involved the exercise of some judgment in determining how large the barriers should be and where they should be placed, the execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion. Accordingly, [Van Arsdale and Grimes] may be held liable if the evidence shows they negligently performed or supervised this work or that they had a duty to inspect the previously erected barricade but were negligent in the performance of this obligation, and summary judgment was thus not appropriate. [31]

■ Applying the reasoning of the Georgia Court of Appeals in *Joyce,* we find that Brown's allegedly negligent acts in connection with the erection of barricades and signs on county road 77 are ministerial in nature.

The county, working with the railroad, made the decision that the bridge would be removed, and the county agreed to furnish the necessary barricades and signs to indicate that the road was closed. Brown was then charged with carrying out the specific task, that is, the erection of barricades and signs, made necessary by the county's discretionary decision. This specific task, like the task for which Van Arsdale and Grimes were responsible in *Joyce,* is of a ministerial character. The final sentence in the quotation from *Joyce* above leads us to conclude that Brown's duty, if any, to inspect and maintain the barricades and signs is also of a ministerial character. This conclusion is reinforced by the Georgia Supreme Court's decision in *Nelson v. Spalding County,* which, like this case, involved a tort claim against a county official responsible for the county roads. In reversing the trial court's determination that the official was entitled to sovereign immunity, the Georgia Supreme Court specifically held: "The act of replacing and repairing signs is ministerial and not discretionary in its nature." [32] Accordingly, under Georgia law as articulated in *Joyce* and *Nelson,* Brown's allegedly negligent acts in erecting and failing to maintain the barricades and signs on county road 77 are ministerial in nature.

Defendants rely on *Gregory v. Cardenaz,* [33] in which the Georgia Court of Appeals held that the alleged failure on the part of county deputy sheriffs to repair a downed stop sign was a discretionary act. There is no indication in the *Gregory* opinion that the deputy sheriffs had any responsibility for the repair or replacement of stop signs. While a deputy sheriff without such responsibility may have discretion as to how to respond to a downed stop sign, the county official responsible for roadway signs is without discretion; he is charged with the ministerial duty of repairing or replacing the sign. Accordingly, *Gregory* is inapposite. Defendants also rely on a number of cases that stand for the proposition that the decision by a govern-

---

30. *Joyce,* 395 S.E.2d at 276.

31. *Id.* at 277 (citations and internal quotations and brackets omitted).

32. *Nelson v. Spalding County,* 290 S.E.2d at 919.

33. 198 Ga.App. 697, 402 S.E.2d 757 (1991), *cert. granted* (May 24, 1991), *cert. vacated* (May 17, 1992).

mental entity as to whether to erect and maintain a traffic control sign is discretionary.[34] None of these cases involve the erection of barricades or signs as a result of the closing of a roadway. Moreover, the Georgia courts have distinguished between the maintenance of traffic control devices and the maintenance of safe streets; the maintenance of safe streets has been held to be ministerial in nature.[35] Thus, these cases are not inconsistent with *Joyce, Nelson,* and our conclusion in this case that Brown's allegedly negligent acts are ministerial in nature.

Accordingly, we hold that Brown's allegedly negligent acts in connection with the erection and maintenance of barricades and signs on county road 77 are of a ministerial character; thus, Brown is not entitled to the defense of sovereign immunity as to plaintiffs' claims seeking recovery for these allegedly negligent acts. The district court erred in granting summary judgment in favor of Brown.

### C. *Summary Judgment for William B. Smith*

■ Plaintiffs seek to recover from Smith for the alleged breach of his duty to inspect and maintain the barricades and signs on county road 77. Defendants argue that Smith had no duty with respect to the erection, inspection, or maintenance of these barricades and signs and, therefore, he cannot be liable for their allegedly faulty condition. Specifically, defendants argue that "Smith was appointed Road Superintendent as a reward for supporting Commissioner Brown politically, and was such 'in name only.' "[36]

Smith has held the title of Road Superintendent for Elbert County since the late 1960s.[37] Notwithstanding his title, Smith was not involved in the initial erection of the barricades and signs on county road 77 following the removal of the bridge.[38] As to the inspection and maintenance of these barricades and signs, Smith said at his deposition that he did not have any responsibility for the conditions on county road 77; his only responsibility was to act on Brown's instructions, if any.[39] Brown corroborated Smith's position, stating that Smith had no independent responsibilities; in Brown's words, Smith's only responsibilities as Road Supervisor were "[t]o do what I tell him to do."[40] There is other evidence, however, that tends to indicate that Smith may have had some independent responsibilities for the inspection and maintenance of county roads. For example, Brown admitted that it was Smith's "job" (but not responsibility) to inspect the roads of Elbert County.[41] Smith said that part of his job was to ride the roads of the county to determine whether any maintenance was necessary.[42] Smith also said that he supervised the road crews[43] and that he assigned the crews their jobs when Brown did not.[44] Smith intimated that he did not always wait for Brown's instructions before carrying out road maintenance work.[45] We find that this evidence, when considered in light of the fact that Smith has carried the title of Road Supervisor for more than two decades, gives rise to a genuine issue of material fact as to whether Smith had a duty to inspect and maintain the barricades and

---

34. See *Denson v. City of Atlanta,* 202 Ga.App. 325, 414 S.E.2d 312, 314 (1991), *cert. denied* (Feb. 4, 1992); *Carter v. Mayor & Alderman of City of Savannah,* 200 Ga.App. 263, 407 S.E.2d 421, 425 (1991); *Christensen v. Floyd County,* 158 Ga.App. 274, 279 S.E.2d 723 (1981).

35. *City of Atlanta v. Atlantic Realty Co.,* 205 Ga.App. 1, 421 S.E.2d 113, 116 (1992); *see also Cyr v. Mayor & Aldermen of Savannah,* 188 Ga. App. 261, 372 S.E.2d 659, 660 (1988) (noting that operation and maintenance of traffic control devices are not related to maintenance of streets).

36. Defendants-appellees brief at 11.

37. October 8, 1991, deposition of Smith at 6.

38. R2–32, April 18, 1990, deposition of Smith at 27.

39. October 8, 1991, deposition of Smith at 86–87.

40. October 8, 1991, deposition of Brown at 49.

41. *Id.*

42. October 8, 1991, deposition of Smith at 51.

43. *Id.* at 8.

44. April 18, 1990, deposition of Smith at 26.

45. October 8, 1991, deposition of Smith at 58.

signs on county road 77. For reasons discussed in part II.B. above, Smith is not entitled to the defense of sovereign immunity as to plaintiffs' claims seeking recovery for Smith's alleged breach of this duty.[46] Accordingly, the district court erred in granting summary judgment in favor of Smith.

### D.  *Denial of Motion to Amend*

 Plaintiffs moved to amend their complaint to make clear that they seek relief for Brown's and Smith's reckless, as well as negligent, conduct. The district court denied the motion. After reviewing plaintiffs' pleadings filed with the district court, we conclude that plaintiffs may pursue their claims based on Brown's and Smith's allegedly reckless conduct without the necessity of amending the complaint. The complaint specifically alleges that defendants acted "recklessly and with such entire want of care as to raise the presumption of a conscious indifference...."[47] Notwithstanding this explicit notice that plaintiffs intended to seek relief for defendants' reckless conduct, defendants' motion for summary judgment addressed only negligent conduct; it did not mention reckless conduct. In their opposition to the motion for summary judgment, plaintiffs again made explicit their intent to seek recovery for Brown's and Smith's reckless conduct; citing deposition testimony and five different affidavits, plaintiffs said: "Plaintiffs have alleged, and the evidence shows, that Defendants Brown and Smith acted knowingly, wantonly, recklessly and with such entire want of care as to raise a presumption of a conscious indifference to the consequences."[48] Plaintiffs' pleadings were sufficient to make Brown's and Smith's reckless conduct an issue in this case. We express no opinion as to the merits of plaintiffs' claims based on this allegedly reckless conduct. We hold only that plaintiffs are entitled to pursue these claims on remand. Accordingly, we vacate the district court's decision denying plaintiffs' motion to amend the complaint.

### *CONCLUSION*

For the reasons stated above, the district court's grant of summary judgment in favor of defendant Elbert County is AFFIRMED, the district court's grant of summary judgment in favor of defendants Brown and Smith is REVERSED, and the district court's denial of plaintiffs' motion to amend the complaint is VACATED. The case is REMANDED for further proceedings consistent with this opinion.

---

**46.** In their appellate brief, defendants argue that, to the extent plaintiffs seek to recover from Smith for the alleged breach of his duty to *develop policies and procedures* for the inspection of Elbert County roads, Smith is entitled to the defense of sovereign immunity. Defendants-appellees brief at 33. We do not read plaintiffs' pleadings as seeking recovery for breach of this particular duty, but, to the extent they do, we agree with defendants. *See Nelson v. Spalding County,* 290 S.E.2d at 919 (county official's decision as to whether to adopt office procedures for the repair and replacement of road signs is discretionary, not ministerial). Thus, to the extent plaintiffs seek to recover for Smith's alleged breach of his duty to develop policies and procedures (as opposed to his duty to inspect and maintain county roads), Smith is entitled to the defense of sovereign immunity.

